Billy CARMEN a/k/a William B. Smith, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 16, 1973.

David Kaplan, Kaplan, Lyon & Brady, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Justice.

Appellant Billy Carmen, also known as William Bud Smith, was charged with breaking and entering the storeroom of the Friedman Company with intent to steal, and possessing a burglar's tool with the intention to use it burglariously. A verdict of guilty was entered on both counts fixing Carmen's punishment at one year for storehouse breaking and two years for possession of burglary tools. Carmen's appeal raises questions concerning the sufficiency of the evidence to justify a finding of guilt and alleges error in the charge to the jury on reasonable doubt.

Two witnesses testified during the course of trial. They were City of Louisville Police Officer Bernard Lammers and Nelson Johnson, manager of the Friedman Company, 213 South Third Street, Louisville. Defendant Billy Carmen did not testify, nor were any witnesses called to testify in his behalf.

The record indicates that Third Street is one way southbound and that the Friedman Company, a clothing store, is situated on the east side of the street. The front of the store faces Third Street and contains an open inverted entranceway which is approximately twelve feet in length and twelve feet in width. There is a small display window at the end of the entranceway and a north door and south door which allow entry into the store itself.

Officer Lammers testified that he and a fellow police officer, Frank Neckar, were patrolling their beat by car on Sunday, November 15, 1970. Lammers was driving. At approximately five minutes to four that afternoon they received a dispatch to go to the Friedman Store where "a break-in was in progress." Another police car was also dispatched to the scene.

Lammers and Neckar arrived at the clothing store about five minutes later. Lammers observed defendant Billy Carmen "walking out of the Friedman's Store through the doorway" with a tire tool in his hand. Officer Lammers further testified that when he first observed defendant "he [Carmen] was inside the store itself" and when appellant "saw the police car, he immediately walked through the door which was standing open." The door referred to by Lammers was on the north side of the open entranceway. When defendant entered the entranceway from the store "he bent down and laid the tire tool on the ground and then proceeded to walk briskly south on Third Street." He was arrested by Officer Neckar in Lammers' presence. Defendant was accompanied by a man named Calvert who followed defendant through the door and was arrested by two other police officers.

Following the arrest, Lammers and Neckar returned to the store and noticed that the door had been forced open. "The wooden frame in the immediate vicinity of the door lock was splintered and the wood

was torn." Lammers related that he knew from past experience that the store was closed on Sundays. The tire tool, a lug wrench, was picked up at the scene by the officers and introduced as an exhibit at the trial.

Nelson Johnson, manager of the Friedman Company, testified that the store was not open for business on Sundays. He related that it is his responsibility to lock the store and that he had for years followed the practice of locking the north and south doors and shaking both from outside the store to assure their secureness. He recalled locking the store on Saturday, November 14, 1970, after all the other employees had left.

On Sunday, the following day, Johnson received a telephone call and was told that someone had "jimmied the door." He went to the store and found that the north door had been "jimmied" open. Upon examining the interior of the store he discovered several leather jackets on the tables and floor. Johnson related that these jackets had been put in boxes and placed on shelves prior to closing the store on Saturday.

At the close of the testimony defendant moved for a directed verdict of acquittal. The motion was overruled. Defendant then objected to the instruction on the definition of reasonable doubt which read as follows:

"No. 4. The defendant is presumed to be innocent of the charges herein until his guilt has been established by the proof beyond a reasonable doubt, and if, upon the whole case, you have a reasonable doubt of the defendant having been proven guilty, you will find him not guilty.

"You are further instructed that a reasonable doubt is a sincere doubt, a real doubt, in that you must ask yourself not whether a better case might have been proven, but whether, after hearing all the evidence, you actually doubt that the defendant is guilty."

The objection was overruled and the instructions were presented to the jury. The jury returned a verdict of guilty on both counts. Defendant's subsequent motion for a new trial was overruled and he brought this appeal.

Appellant bases his contentions that it was error to overrule his motions for a directed verdict and new trial on two grounds. These are that the corpus delicti was never proven beyond a reasonable doubt and that the law and evidence are not in conformity with the proof and indictment. These contentions relate to the sufficiency of the evidence to sustain the conviction and we shall consider them together.

■ Appellant contends that the evidence against him is circumstantial, is not inconsistent with a reasonable hypothesis of innocence, and raises no more than a suspicion of guilt. Appellant alleges that the prosecution failed to prove "a breaking" and "intent to steal." These are requisite elements of storehouse breaking. KRS 433.190.

It is argued that it was impossible for Officer Lammers to have seen appellant inside the store because the police car was traveling south and the north door is not visible until the area in front of the store is reached. While it is conceded that the door is visible from the front of the store, it is argued that if Lammers was in this position it is inconceivable that he would allow appellant sufficient time to walk through the door into the entranceway, put down the lug wrench, walk through the entranceway and proceed south on Third Street before making an arrest. Thus, it is contended that Officer Lammers did not see appellant either inside the store or walking out of the north door. In the absence of this link in the chain of evidence, appellant argues that it is as consistent to suppose that appellant was window shopping on a Sunday afternoon and was looking in the display window of a downtown store when he noticed the door ajar and a

lug wrench on the ground as it was that he was guilty of breaking and entering the store. He may have picked up the tool to inspect it and put it back down when he heard the police alarm, realizing that if he were seen with it in his hands he would be arrested. Without this link, it is alleged that the prosecution failed to prove "a breaking." Similarly, if really all that was proved was that appellant was in the vicinity of the store at the time the police arrived, evidence of the leather jackets being moved was not sufficient to establish an intent to steal. This same reasoning was developed by defense counsel during trial and was an attack on Officer Lammers' credibility. Lammers never wavered from his statement that he saw appellant walk through the north door of the store.

■ Appellant's reasoning is hardly compelling. It may be true that the north door is only visible from the front of the store, but Officer Lammers testified that he was in front of the store when he saw appellant exit through the door. If it seems incredible to appellant that Lammers would allow him time to reach the street before making an arrest, we submit that the question of Lammers' credibility was for the jury to consider.

■ Although it is true that "a defendant cannot be convicted on circumstantial evidence that is as consistent with innocence as with guilt," Fugate v. Commonwealth, Ky., 445 S.W.2d 675 (1969), it nevertheless is equally true that, "if the totality of the evidence is such that the judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient, albeit circumstantial." Hodges v. Commonwealth, Ky., 473 S.W.2d 811 (1971). Matthews v. Commonwealth, Ky., 481 S.W.2d 647 (1972). We think that the evidence in the case at bar fits the latter category.

■ Concerning the question of ruling on a motion for a directed verdict of acquittal we recently held that "[i]t is only where the testimony on behalf of the Commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt, that a directed verdict of acquittal should be given." Bradley v. Commonwealth, Ky., 465 S.W.2d 266 (1971). We hold that it was not error to overrule appellant's motion for a directed verdict of acquittal. Furthermore, we find no abuse of discretion by the trial court in overruling appellant's motion for a new trial. Jillson v. Commonwealth, Ky., 461 S.W.2d 542 (1970).

 Appellant's final contention that the instruction on reasonable doubt was erroneous is without merit. See Merritt v. Commonwealth, Ky., 386 S.W.2d 727 (1965) and Whitaker v. Commonwealth, Ky., 418 S.W.2d 750 (1967); Evans v. Commonwealth, Ky., 474 S.W.2d 370 (1971).

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.